Streit *v.* Citizens Fire Insurance Co.

---

Samuel Streit and others

*v.*

The Citizens Fire Insurance Company and others.

1. Though an insurance company may, under the 48th section of the act to provide for the regulation and incorporation of insurance companies, (*Rev.* p. 505,) be regarded as insolvent if it fail to make up, on the order of the insurance commissioner, deficiency in its capital

stock, it will not be held to be insolvent under the 70th section of the act concerning corporations, merely because of such deficiency, if it be solvent in fact.

2. That an insurance company has ceased to do business as such, that it has re-insured its risks, and that its officers are engaged merely in collecting its assets and paying its debts, are not sufficient reasons for appointing a receiver or issuing an injunction.

3. Where a corporation has ceased to do business, and apparently nothing remains to be done but to pay its debts and divide the surplus among the stockholders, it is the duty of the directors, under *Rev.* p. 182, § 34, to call a stockholders' meeting.

4. That a large majority of stockholders is in favor of a particular plan of management or proposed transaction, will not prevent this court from extending its protection over the rest of the stockholders, or any of them, on sufficient grounds.

---

Bill for relief. On bill and affidavits, and answer and affidavits, and order to show cause and depositions taken thereunder.

*Mr. T. N. McCarter*, for complainants.

*Mr. Joseph Coult, Mr. E. M. Pennington* and *Mr. H. C. Pitney*, for defendants.

THE CHANCELLOR.

The bill alleges that the defendant corporation is insolvent; that its directors have re-insured all its outstanding risks in another Newark company, and have ceased to do the business for which it was incorporated; that the directors and officers, although they are merely engaged in winding up the concern, have failed and refused to call any meeting of the stockholders to communicate the condition of the company and its affairs; that they are still continuing to occupy the same office which they occupied when the company was in the full tide of its business (the rent of the office is $2,000 a year), although for all the purposes for which an office is now required they might be sufficiently

Streit *v.* Citizens Fire Insurance Co.

accommodated with an office at a much lower rent; that they still continue to pay the same salaries to the officers as heretofore; that they are paying to the president $1,000 a year, and to the secretary $1,200 a year, and are employing a traveling agent to collect premiums due the company; that they are dealing with the assets wastefully, and in such a manner as to promote their own interest and prejudice that of the other stockholders; that they have publicly advertised the assets for sale and are proceeding to convert them into cash with all practicable dispatch, to the detriment of the interests of the stockholders therein; that in one instance they disposed of, by assignment thereof to one of the directors (who subsequently collected the amounts due thereon in full), two good and well-secured mortgages on property in the city of Newark, amounting together to the sum of $8,000, for $6,000, thus causing the stockholders an unnecessary loss of $2,000; that though, as the complainants insist, the directors have no right to do so without giving the other stockholders an opportunity to be previously heard in the matter, they intend to repay out of the assets $60,000 to certain stockholders who contributed that money in 1877, to make up deficiencies in the reserve; that the president refused, on application on the part of one of the complainants, to show the resolution on the minutes in regard to that contribution; that the complainants have been unable, on application, to obtain a copy or inspection of the contract of the re-insurance above referred to; that the directors and officers have transferred to the attorneys of the company, in trust, all, or nearly all, of the securities of the company, and that the trustees have transferred part of them to the Peoples Insurance Company, of Newark, for premiums for the re-insurance, and hold the rest in trust for the Citizens company, and that the trustees have given no security whatever for the administration of their trust in respect to the securities so transferred to them. The bill prays an injunction and receiver. On the filing of the bill an order to show cause was granted. The defendants have

answered, and depositions to be used on the hearing of the order have been taken on both sides.

The 70th section of the "act concerning corporations" provides that application may be made to this court against any incorporated company which shall have become insolvent or shall suspend its ordinary business for want of funds to carry it on; and it also provides for the action of this court in the premises, in restraint of the company and its officers and agents, on it being made to appear to the chancellor that the company has become insolvent, and is not about to resume its business in a short time, with safety to the public and advantage to the stockholders.

The 72d section provides for the appointment of a receiver or trustees to wind up the company, if the circumstances of the case and the ends of justice require it.

The complainants' counsel insists that the provisions of the 48th section of the "act to provide for the regulation and incorporation of insurance companies," (*Rev.* p. 505,) furnish a criterion as to what shall be regarded as insolvency in the case of insurance companies, different from and in addition to those which existed previously to the passage of that act; that whenever it shall appear that a company is in the condition which, under that section, would make it the duty of the secretary of state to require it to make up deficiency in its capital stock, it should be held to be insolvent, under the 70th section of the act concerning corporations.

The provision of the insurance act just referred to is, that whenever it shall appear, as the result of the examination by the secretary of state or his representatives, that the assets of any fire insurance company organized under the laws of this state, after charging it with an amount requisite for the re-insurance of all its outstanding risks, and with its other proper liabilities, excepting capital stock paid in, amount to less than three-fourths of such capital, if it be a joint stock capital company, or, in the case of mutual companies, if the assets, less unsettled claims and other actual

liabilities, amount to less than three-fourths of the sum requisite for re-insurance, the secretary of state shall call on the company to make up such deficiency within such reasonable time as he shall fix, and in case of failure to comply with such requisition, he shall communicate the fact to the attorney-general, whose duty it shall be to apply, forthwith, to the chancellor for an order to show cause why an injunction should not issue restraining the company from further business, &c., &c.  *Rev.* p. 515.

It is obvious that the construction contended for on the part of the complainants, cannot be adopted.  The mere impairment of the capital of a company, even though it be to the extent of more than one-fourth, is by no means evidence of a condition of insolvency.  The secretary of state, under the provision just quoted, is to call upon a capital stock company to make up deficiency under circumstances which are in nowise indicative of insolvency; for, though its assets be sufficient to pay its debts and liabilities, if, after charging it with a sum sufficient to pay the re-insurance of all its risks and its other proper liabilities, (that is, after providing for all its liabilities to its policy-holders and creditors,) its capital stock shall appear to be impaired to the extent of more than twenty-five per cent., he may then require it to make up the deficiency.  Though it might appear that the company would, if wound up, have a million of dollars of capital left, notwithstanding the impairment, the act, nevertheless, authorizes the secretary to require it to make up the deficiency in its capital.  It would be absurd to say, in such a case, that the company is insolvent.

The legislature has deemed it proper to exercise a censorship over insurance companies, and, as a measure of safety to the public, to require a company whose capital is impaired to the extent of more than one-fourth, at once to make up the deficiency, under penalty of being compelled to cease doing business.  But it never meant to declare that such a condition should be regarded as a condition of insolvency, though, under such circumstances, in case of a failure to

comply with the requirement, the company may, merely because of that failure, be wound up by this court. That condition of impairment of capital and failure to make up the deficiency, though not a condition of insolvency, is, by the provisions of the insurance act, made sufficient to warrant action on the part of this court, which, without the provision under consideration, could not be taken, except on proof of the existence of insolvency. The Citizens Fire Insurance Company cannot be said to be insolvent. Indeed, it is not insisted that it is so, according to the common understanding of the term. It has provided for all its risks, and is able to pay all its other liabilities out of the cash in its treasury, and other assets which can be made immediately available without sacrifice; and it will, after such payment, have a large surplus of assets distributable among its stockholders. But it has suspended its ordinary business for want of funds. It has ceased to do business as an insurance company, and its directors and officers are now engaged merely in collecting its assets and paying its debts. This fact, however, is not, of itself, enough to entitle the complainants to an order of the court appointing a receiver, or even to an injunction.

The chancellor, before granting an injunction, is, by the terms of the act concerning corporations, to be satisfied not only that the company is not about to resume its business in a short time with safety to the public and advantage to the stockholders, but that it has become insolvent, and even in such case it is not obligatory on him to appoint a receiver (*Rawnsley* v. *Trenton Ins. Co.*, 1 *Stock.* 347), but he may in his discretion do so if the circumstances of the case and the ends of justice require. The crippled condition of this company is not, so far as appears or is alleged, due to lack of integrity in the management. Its misfortunes are imputed to other causes, which also have disastrously affected other companies elsewhere. The conduct of the defendants (the directors and officers) in their management of the affairs of the company since the interdict of this court

Streit *v.* Citizens Fire Insurance Co.

was, under the provisions of the insurance act, laid upon the company, is the ground of the present application. It appears that at the close of 1876 the annual statement of the company showed that its reserve fund was considerably impaired; and in order to make it good, some of the stockholders contributed to the assets for the purpose, in various securities, the sum of $60,000. This money, according to the agreement then made between them and the company, was to be repaid to them, with interest, whenever the net surplus over and above all legal and necessary reservations should be sufficient to pay the entire amount thus received by the company, the company to have the right at its option to release the securities at the value at which they were received by it. The company was thus enabled to proceed with its business of insurance, and did so up to July, 1877, when the secretary of state, upon an examination of the condition of the company, found that an impairment of the capital existed to the amount of more than thirty per cent. (the capital was $200,000), and called upon the company to make up the deficiency, and, on its failing to do so, instituted proceedings in this court against it under the insurance act, and an injunction was thereupon issued.

The company then, with his approval, re-insured all its outstanding risks in the Peoples Insurance Company, of the city of Newark, and to secure to that company payment of the premiums for re-insurance, and also to secure the payment of the debts of the company, assigned all its bonds and mortgages to its attorneys in trust for those purposes. This action was taken in accordance with an understanding on the part of the company that it would be satisfactory to the secretary of state, and it was so, in fact. The proceedings in this court were then dismissed, and the injunction, of course, thereby dissolved. Since that time the company has transacted no insurance business, but the directors and officers have been engaged in collecting the money due to it and paying its debts. It appears that all the action which has been taken by the directors and officers, for the extrica-

tion of the company from its embarrassment, has received the sanction of the secretary of state as insurance commissioner. The assignment in trust was, according to the answer, accepted by the trustees, at the request of the Peoples company, the Citizens company, and the secretary of state. The re-insurance was a judicious measure, and seems to have been very carefully and economically accomplished; and the assignment in trust was, under the circumstances, a necessary concomitant. No suggestion is made against the responsibility of the Peoples company. In the whole transaction there appears to be nothing to condemn, unless it be the transfer by the Citizens company of all its bonds and mortgages to trustees. That, however, became a necessity of the situation, and was done, as before stated, with the sanction of the secretary of state, and was supposed at the time to be necessary, as, in fact, it was, to avert the impending danger that the company's affairs would pass into the hands of a receiver for settlement. The arrangement has brought no injury to the company or its property. The bonds and mortgages which remain in the hands of the trustees may, now that the purposes of the trust, so far as the payment of the premiums for re-insurance and security for unpaid losses and other debts of the company are concerned, have been answered, be delivered over to the company. The trustees have acted without compensation, and, as far as appears, with fidelity. No allegation is made to the contrary. The fact that the directors and officers acted in this matter with the approval of the secretary of state, as insurance commissioner, and the admitted fact that the company was in a great strait, is sufficient excuse for their unusual action. Nor does their conduct in retaining the office of the company as a place of business appear to be in anywise reprehensible. The company's lease of the premises has not yet expired, and the efforts made to obtain consent to a surrender have not been successful. It does not appear that they could have obtained a tenant for the premises. Their action in continuing the salaries of the president and secre-

Streit *v.* Citizens Fire Insurance Co.

tary, and in employing an agent to collect money due the company for premiums, does not appear to be, under the circumstances, such as to call for the censure of this court. Nor have they so dealt with the securities, in their efforts to convert them into cash, as to warrant any imputation on their integrity. The evidence, indeed, discloses the fact that but for the rescission of the contract by the president, by the advice of counsel, one of the directors would have realized a large sum of money for his own individual gain, in purchasing from the company two of the mortgages held by it, and immediately disposing of one of them to the mortgagor, not, as stated in the bill, for the full amount due, but for a sum much larger than that paid by him to the company for the mortgage. This transaction, however, was not consummated; and there is no reason to believe that any member of the board, or any of the officers, participated in or was cognizant of the design of the purchaser of the securities. Besides, the president appears to have acted promptly in the matter for the protection of the company.

The repayment of the $60,000 to the stockholders who advanced that money to the company, was not only justifiable, but it would be difficult to find a reason why it should not have been done, except as to those of them who were, when it was repaid, indebted to the company. The debts due from them should have been provided for before payment of money or delivery of securities to them. The directors did not act wisely or fairly towards their fellow-stockholders, in paying over or delivering securities to those debtors for the parts which they advanced of the $60,000, while the debts which they owed to the company were unpaid or insufficiently secured. There are some other matters in the management of the affairs of the company which were more or less criticised on the hearing of the order, but none of them are mentioned in the bill. They came out in the depositions. I do not deem it necessary to speak of them in detail. It is enough to say, that they are not stated in the bill. *Rawnsley* v. *Trenton Ins. Co., supra.*

Nor are they immediately connected with the subject matter of the complaint, but are connected with the past management of the company antecedent to the time when it ceased to do business.

It would have been more prudent for the directors to have called a meeting of the stockholders as soon as they determined that the company must cease to do business, and probably be wound up. And they ought to have done so.

The 34th section of the act concerning corporations provides that the directors of any company incorporated under any law of this state shall call a meeting of the stockholders, when, in their judgment, it shall be deemed advisable and most for the benefit of the corporation that it should be dissolved before the expiration of the time limited in its charter. It is true, the board of directors of this company may not have deemed it advisable and most for the benefit of the corporation that it should be dissolved. But the company had been compelled to cease doing business, and, apparently, nothing remained but to pay its debts and divide the residue of its assets among the stockholders. Under such circumstances it was the duty of the directors to call the stockholders together. The holders of three-fourths of the stock of the company have, by their petition to this court in this cause, expressed their satisfaction with the management of the affairs of the company by the present directors and officers, and have asked that a receiver may not be appointed. The other stockholders are, of course, entitled, as any holder of a single share alone would be, to the protection of this court, if a proper case appears. The fact that a large majority of the stockholders of a company are in favor of any particular plan of management, or proposed transaction in the management, will not, of itself, avail to prevent this court from extending its protection to the rest, or any of them, against such plan or transaction, if there appears to be sufficient reason for so doing; and this court will protect stockholders against unlawful acts of directors by restraining them. The directors ought not to

be permitted to proceed to what will be, practically, the dissolution of the corporation, without fully recognizing the rights of all the stockholders. The fact that the owners of more than three-fourths of the stock concur in the propriety of their action hitherto, is no reason why they should not be required to discharge their legal duty in calling a meeting of the stockholders before actually winding up the company. The question whether the company is to be wound up or to be continued should be submitted to the stockholders without unnecessary delay.

In re-insuring the outstanding risks, and providing money for the payment of the debts, the directors have but yielded to the necessities of the situation, and therein they are free from blame. Nor are they censurable for any disposition of the assets, except that which was made in the repayment to those of the contributors of the $60,000 who were indebted to the company the money (or securities instead thereof) advanced by them, without first satisfying or securing those debts. In placing all the bonds and mortgages out of their hands, as they did, they seem to have yielded to the necessities of the occasion, but the action, though it may have been necessary, was, nevertheless, extraordinary. It was, of course, no part of their duty, except under very unusual circumstances, to pass over into the hands of any trustees whomsoever, whether with or without security, the assets of the company to such an extent. The circumstances appear to have furnished sufficient justification for that action, however. The officers ought not to have denied to any stockholder an opportunity, properly applied for, to examine the minutes of the meetings of the directors. The directors ought not to have proceeded to the sale of the entire assets of the company without first calling a meeting of the stockholders. They were warranted in selling so much as the pressing needs of the company demanded. All these things, however, have been done, and are, with the exception of the disposition of the remaining assets, beyond the reach of the preventive power of injunction. The

Goodell v. Union Association, &c., of Burlington Co.

court may, and I think it should, interpose, so far as to protect the stockholders against a disposition of the assets, further than may be necessary to pay the debts of the company, and so preserve the *status quo* until the stockholders shall have been called together to consider the condition of the company and determine as to its future.

Though the motion for a receiver is denied, the defendants will be restrained, until further order, from disposing of the assets, except so far as may be necessary for the payment of the debts, until a meeting of stockholders shall have been held. The company will be permitted to make collections of debts due to it, and the defendants will be required to protect and preserve the company's property in their possession, or under their control, and will be held responsible to this court therefor accordingly. After the annual meeting of the stockholders, application may be made by either party, on notice, for the relief to which they may then consider themselves entitled.